UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>SERGIO CHAVEZ-MACIAS, SERGIO CHAVEZ-VERDUZCO, ARMANDO OROZCO-GUILLEN<br><br>    Defendant. | Case No. 1:16-CR-67-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it motions for acquittal filed by defendants Sergio Chavez-Macias and Sergio Chavez-Verduzco. The motions are fully briefed and at issue. For the reasons explained below, the Court will deny both motions.

## LITIGATION BACKGROUND

The Superseding Indictment in this case charged three defendants (Sergio Chavez-Macias, Sergio Chavez-Verduzco, and Armando Orozco-Guillen) with conspiracy to distribute methamphetamine. It also charged two of those defendants (Chavez-Verduzco and Chavez-Macias) with four counts of distributing methamphetamine and one count of operating a continuing criminal enterprise (CCE). Prior to trial, the Government dropped one of the four distribution counts, and the case went to trial on the remaining five counts.

When the Government rested, the three defendants made motions for acquittal under Rule 29. The Court reserved ruling on the motions until the jury verdict was rendered.

At the conclusion of the trial, the jury rendered a verdict acquitting Orozco-Guillen on the conspiracy charge, acquitting Chavez-Macias and Chavez-Verduzco on the three remaining distribution charges, acquitting Chavez-Macias on the CCE charge, but finding Chavez-Macias and Chavez-Verduzco guilty of the conspiracy charge, and finding Chavez-Verduzco guilty of the CCE charge.

Chavez-Macias and Chavez-Verduzco now seek through their motions to be acquitted of the charges on which they were convicted. The Court will resolve the motions after reviewing the governing legal standard.

## LEGAL STANDARD

A defendant may move for a judgment of acquittal, or renew such a motion, within fourteen days after a guilty verdict. Fed. R. Crim. P. 29(c). A motion for acquittal is reviewed for sufficiency of the evidence. *U.S. v. Stoddard*, 150 F.3d 1140, 1144 (9th Cir. 1998). "Under that standard, evidence supports a conviction, if, viewed in the light most favorable to the government, it would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *U.S. v. Graf,* 610 F.3d 1148, 1166 (9th Cir. 2010). "In ruling on a Rule 29(c) motion, a district court must bear in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts. *U.S. v. Rojas*, 554 F.2d 938, 943 (9th Cir. 1977). The court may reserve decision and decide the motion

**Memorandum Decision & Order – page 2**

after a verdict of guilty if it chooses. Fed. R. Crim. P. 29(b).  If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved. *Id.*

## ANALYSIS

### Conspiracy

The Indictment charged Chavez-Macias and Chavez-Verduzco with conspiring together (and with Armando Orozco-Guillen) to distribute methamphetamine between November of 2012 and continuing to March 1, 2016.  To prove this conspiracy, the Government had to prove more than just that Chavez-Macias and Chavez-Verduzco sold drugs to someone else knowing that the buyer would later sell to others; the Government had to show an agreement with a buyer that the buyer would distribute the drugs.  *U.S. v. Loveland,* 825 F.3d 555 (9th Cir. 2016).

The main evidence tying the two defendants to the conspiracy charge came from witnesses Sgt. Kevin Louwsma and David Wales.  Wales testified that in the summer of 2015, he was distributing methamphetamine to an individual named Jimmy Peirsol on a weekly basis, and had been doing so for between 7 months and a year.  Wales also testified that he was receiving methamphetamine from a Brian Cluff.

Wales testified that Cluff asked him if he wanted to meet with Cluff's source of supply.  The source was looking to expand his distribution network, and Wales agreed to meet with him.  They met in a hotel room, and Cluff introduced three men to Wales as his source of supply.  Two of the men were introduced to Wales as a father and his son.  During his testimony, Wales identified the father and son as Chavez-Macias (son) and

**Memorandum Decision & Order – page 3**

Chavez-Verduzco (father).[1] Wales testified that the son was translating English into Spanish for the father, and that he recognized them both from seeing them at Peirsol's shop. Wales testified that Peirsol's source of supply was Chavez-Macias and Chavez-Verduzco.

The purpose of this hotel meeting was to discuss the possibility of Wales becoming a distributor for the Chavezes. At this meeting, Wales arranged to receive from the Chavezes 5 kilos of methamphetamine at a later date, and discussed doing future deals.

Shortly thereafter, Wales received a call from "junior" – Chavez-Macias – that he was dropping off methamphetamine at Cluff's shop. An hour or two later, Cluff called Wales and told him a shipment of methamphetamine was ready to be picked up. Wales distributed that methamphetamine, and later paid Chavez-Macias the agreed-upon price for the drugs.

Sgt. Louswma, an undercover officer who bought drugs from Cluff, testified that Cluff told him that his source of supply was a father and son from the Twin Falls area, which is the area where Chavez-Macias and Chavez-Verduzco were living at the time. On January 27, 2016, Cluff told Sgt. Louwsma that his source of supply was on their way to Cluff's shop. Shortly thereafter officers saw the defendants' black Yukon arrive

---

[1] Although Wales had earlier stated that Chavez-Verduzco had visible silver in his teeth – a feature not visible in the courtroom – he nevertheless identified Chavez-Verduzco as the father who he met with in the hotel room, and the jury obviously was convinced by that courtroom identification and discounted Wales's earlier inaccurate description.

occupied by Sergio Chavez-Macias and two other individuals. The following morning, Cluff says his source had come and brought more methamphetamine.

Through other witnesses, evidence was introduced regarding text messages on Chavez-Verduzco's phone appearing to show he was negotiating prices and deliveries of controlled substances. Other text messages on Orozco-Guillen's cell phone show that Chavez-Macias was doing the same thing.

This evidence, viewed in a light most favorable to the Government, would allow any rational trier of fact to find the essential elements of a conspiracy beyond a reasonable doubt." *Graf,* 610 F.3d at 1166. The motions for acquittal regarding the conspiracy convictions will be denied.

**CCE Charge**

Only Chavez-Verduzco was convicted on the CCE count. The Court instructed the jury on the CCE count as follows in Instruction 20:

> The defendants Sergio Chavez-Macias and Sergio Chavez-Verduzco are charged in Count Six of the indictment with engaging in a continuing criminal enterprise in violation of Section 848 of Title 21 of the United States Code. In order for a particular defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt as to that defendant:
> 1. The defendant committed the violations of 21 U.S.C. §§ 841(a)(1), 843(b), 846, and 856 which violations include but are not limited to, the substantive violations alleged in Counts One, Three, Four, and Five.
> 2. The violations were part of a series of three or more violations committed by the defendant over a definite period of time, with the jury unanimously finding that the defendant committed each of at least three such violations.
> 3. The defendant committed the violations together with five or more other persons. The government does not have to prove that all five or more of the other persons operated together at the same time, or that the defendant knew all of them;
> 4. The defendant acted as an organizer, supervisor or manager of the five or

more other persons; and
  5. The defendant obtained substantial income or resources from the violations.
     "Income or resources" means receipts of money or property.

Although the jury acquitted Chavez-Verduzco on the three distribution Counts (Counts Three, Four, and Five), the jury may rely on uncharged offenses to meet the predicate offenses requirement. *U.S. v. Sterling*, 742 F.2d 521, 526 (9th Cir.1984) ("[T]here is no legal requirement that the violations which make up the continuing series be specifically listed in the indictment.").

The conspiracy conviction counts as one of the required three predicate offenses. *U.S. v. Hernandez-Escarsega*, 886 F.2d 1560, 1570 (9th Cir.1989). And a text message chain from Chavez-Verduzco's cell phone (occurring on December 15 and 16, 2017), constitutes a second predicate offense as it shows a drug deal for one kilo of methamphetamine being sold for $6500. That drug offense was not listed in the Counts for which Chavez-Verduzco was acquitted so it could legitimately be counted as a second predicate offense.

The third predicate offense is established by the testimony of Wales that over a period lasting from early 2015 until the summer of 2015, he purchased methamphetamine from Jimmy Peirsol, and learned that Peirsol's source of supply was Chavez-Verduzco. Similarly, Wales testified he bought methamphetamine from Brian Cluff and learned that Cluff's source of supply was also Chavez-Verduzco.

The CCE count also required that the Government establish that Chavez-Verduzco managed or supervised five other individuals. The evidence showed that he supervised or

managed (1) his son Chavez-Macias; (2) Brian Cluff; (3) Jimmy Peirsol; (4) David Wales; and (5) multiple drivers who picked up and delivered drug money, including Orozco-Guillen. Although the jury did not find that Orozco-Guillen knowingly participated in the conspiracy, the evidence showed that he was transporting drug money for Chavez-Verduzco, even if he thought the money was payment for roosters or vehicles. The evidence also showed that Chavez-Verduzco received substantial income from the drug deals.

Because all the elements of the CCE offense were established by the Government, the Court will deny the motion for acquittal by Chavez-Verduzco.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motions for acquittal (docket nos. 144 & 145) are DENIED.

DATED: November 13, 2017

B. Lynn Winmill
Chief Judge
United States District Court